No. 22-1054

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

UNITED STATES EX REL. JOHN DOE,
*Plaintiff-Appellant,*

v.

CREDIT SUISSE AG,
*Defendant-Appellee,*

UNITED STATES OF AMERICA
*Party-in-Interest-Appellee.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

————————

**BRIEF FOR APPELLEE THE UNITED STATES**

————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

JESSICA D. ABER
  *United States Attorney*

CHARLES W. SCARBOROUGH
  *(202) 514-1927*
STEPHANIE R. MARCUS
  *(202) 514-1633*
  *Attorneys, Appellate Staff*
  Civil Division, Room 7539
  U.S. Department of Justice
  950 Pennsylvania Avenue, N.W.
  Washington, D.C.  20530-0001

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ...................................................................4

STATEMENT OF THE ISSUE ...........................................................................4

STATEMENT OF THE CASE .............................................................................4

    A.    Statutory and Regulatory Background ............................................4

    B.    Factual Background and District Court Proceedings ...................6

SUMMARY OF ARGUMENT .........................................................................10

STANDARD OF REVIEW ...............................................................................14

ARGUMENT: THE DISTRICT COURT PROPERLY GRANTED THE UNITED
STATES' MOTION TO DISMISS UNDER SECTION 3730(C)(2)(A). ....................14

    A.    *Polansky* Mandates Affirmance of the District Court's Grant
          of the Government's Motion to Dismiss. ....................................14

    B.    The FCA Does Not Require an In-Person Hearing. ................18

          1.    Neither the text nor the structure of the FCA requires
              in-person hearings. ...........................................................18

          2.    A hearing on the pleadings satisfies any potential due
              process interest that relator has in his qui tam action. ...................24

          3.    The district court properly concluded that the circumstances
              of this case did not warrant an in-person hearing..........................27

    C.    This Court Need Not Decide Whether Relator Stated a
          Viable Claim Under the FCA......................................................32

CONCLUSION ..................................................................................................34

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Arrieta–Gimenez v. Arrieta–Negron,*
   859 F.2d 1033 (1st Cir. 1988) ........................................................................21

*Board of Regents of State Colls. v. Roth,*
   408 U.S. 564 (1972) ........................................................................................25

*Borzilleri v. Bayer Healthcare Pharm.,*
   24 F.4th 32 (1st Cir. 2022)............................................................................14

*Brooks v. Dunlop Mfg. Inc.,*
   702 F.3d 624 (Fed. Cir. 2012) ................................................................ 24, 25

*Brutus Trading LLC v. Standard Chartered Bank,*
   No. 20-2578, 2023 WL 5344973 (2d Cir. Aug. 21, 2023)............................19

*Chang v. Children's Advocacy Ctr. of Del.,*
   938 F.3d 384 (3d Cir. 2019) .........................................................................14

*Chrysler Credit Corp. v. Cathey,*
   977 F.2d 447 (8th Cir. 1992) ........................................................................21

*County of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ......................................................................................27

*Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.,*
   33 F.3d 390 (4th Cir. 1994) ..........................................................................21

*FCC v. WJR, The Goodwill Station, Inc.,*
   337 U.S. 267 (1949) ......................................................................................25

*Geear v. Boulder Cmty. Hosp.,*
   844 F.2d 764 (10th Cir. 1988) ......................................................................21

*Goldberg v. Kelly,*
   397 U.S. 254 (1970) ......................................................................................26

*Greene v. WCI Holdings Corp.*,
136 F.3d 313 (2d Cir. 1998) ...............................................................21, 25, 26

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009) ...............................................................24

*Moore v. Florida*,
703 F.2d 516 (11th Cir. 1983) ...............................................................21

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) ...............................................................26

*Polansky v. Executive Health Res., Inc.*,
17 F.4th 376 (3d Cir. 2021) ...............................................................3, 11, 16

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007) ...............................................................20

*Sylvia Dev. Corp. v. Calvert County*,
48 F.3d 810 (4th Cir. 1995) ...............................................................27

*Tri–County Paving, Inc. v. Ashe County*,
281 F.3d 430 (4th Cir. 2002) ...............................................................27

*United States v. Florida E. Coast Ry. Co.*,
410 U.S. 224 (1973) ...............................................................19

*United States ex rel. Backer v. Cooperative Bank U.A.*,
No. 17 Civ. 2708, 2019 WL 5593302 (S.D.N.Y. Oct. 30, 2019) ...............20

*United States ex rel. Eisenstein v. City of New York*,
556 U.S. 928 (2009) ...............................................................4

*United States ex rel. Health Choice All., LLC v. Eli Lilly & Co.*,
4 F.4th 255 (5th Cir. 2021) ...............................................................23

*United States ex rel. May v. City of Dallas*,
No. 3:13-CV-4194-N-BN, 2014 WL 5454819 (N.D. Tex. Oct. 27, 2014) ...............20

*United States ex rel. Polansky v. Executive Health Res., Inc.*,
599 U.S. 419 (2023) ............... 2, 3, 4, 10, 11, 12, 14, 15, 16, 17, 22, 23, 24, 27, 32, 33

*United States ex rel. Rodriguez v. Weekly Publ'ns, Inc.*,
  144 F.2d 186 (2d Cir. 1944) ....................................................................25

*United States ex rel. Siller v. Becton Dickinson & Co.*,
  21 F.3d 1339 (4th Cir. 1994) ............................................................. 19, 20

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*,
  14 F.3d 645 (D.C. Cir. 1994) ...............................................................19

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins.*,
  944 F.2d 1149 (3d Cir. 1991) ...................................................... 19-20, 22

*United States ex rel. Vanderlan v. Jackson HMA, LLC*,
  No. 3:15-CV-767, 2020 WL 2323077 (S.D. Miss. May 11, 2020)..............................20

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ........................................................................24

**Statutes:**

False Claims Act,
  31 U.S.C. 3729 *et seq.* ...................................................................4
    31 U.S.C. 3729(a) ........................................................................4
    31 U.S.C. 3729(a)(1)(G) ..................................................................5
    31 U.S.C. 3729(b)(3) .....................................................................6
    31 U.S.C. 3730(b)(1) ............................................................... 4, 5, 14
    31 U.S.C. 3730(b)(2)-(4) ............................................................. 1, 4
    31 U.S.C. 3730(b)(4)(B) ................................................................4-5
    31 U.S.C. 3730(c)(1) ................................................................. 1, 4
    31 U.S.C. 3730(c)(2)(A) ..................... 1, 3, 4, 5, 11, 18, 19, 20, 25, 27
    31 U.S.C. 3730(c)(2)(B) ..................................................................5
    31 U.S.C. 3730(c)(3) .....................................................................5
    31 U.S.C. 3730(d) ........................................................................5
    31 U.S.C. 3730(e)(4)(A) .............................................................. 19, 20

28 U.S.C. 1291 .............................................................................4

28 U.S.C. 1331 .............................................................................4

28 U.S.C. 1391 .............................................................................8

**Rules:**

Fed. R. Civ. P. 37............................................................................................21

Fed. R. Civ. P. 41(a) ..................................................................... 2, 10, 14, 15

Fed. R. Civ. P. 41(a)(1)(A)..............................................................................16

Fed. R. Civ. P. 56(d)........................................................................................22

**INTRODUCTION**

The False Claims Act (FCA) permits private individuals to enforce its provisions by filing civil actions on behalf of the United States, alleging that a defendant has defrauded the federal government. Through such qui tam suits, these individuals—known as relators—may seek redress for the government's injuries. The government may intervene and take over the action after receiving the complaint and the relator's material evidence and information. 31 U.S.C. 3730(b)(2)-(4), (c)(1). If the government declines to intervene, the relator may conduct the litigation, but the FCA does not leave such suits entirely in the hands of relators, who may not always make litigation choices that are in the government's best interests. Rather, Congress reserved to the Attorney General several important powers, including broad authority to "dismiss the action notwithstanding the objections" of the relator. 31 U.S.C. 3730(c)(2)(A).

The United States exercised that authority here, filing a motion to dismiss the qui tam action filed by relator John Doe alleging that his former employer, defendant Credit Suisse AG, failed to disclose criminal conduct to the United States, thereby causing a decrease in the criminal penalty provided for in a May 19, 2014 plea agreement that resolved criminal charges filed by the United States against Credit Suisse. Prior to filing the motion, the United States declined to intervene, and, after considering relator's arguments against dismissal, the government determined that it

was not in the best interests of the United States to allow this qui tam action to proceed. The government moved to dismiss on three grounds: (1) it had concluded that relator's complaint fails to state a claim upon which relief can be granted; (2) continued litigation of the action would interfere with ongoing coordination between Credit Suisse and the government pursuant to the plea agreement; and (3) allowing the case to proceed would significantly burden government resources and would intrude on privileged or protected information. *See* JA 34-38, JA 243-250.

Relator filed an opposition to the motion, and the government filed a reply. Following full briefing and a hearing on the pleadings, the district court granted the motion. JA 264-269. The court concluded that relator had failed to state a claim under the FCA, and that relator's qui tam action "threatens to interfere with" the government's "ongoing implementation of the plea agreement" with Credit Suisse and its "ability to continue working with Credit Suisse in pursuit of uniquely governmental and federal interests." JA 267-268. The court also found that allowing relator's action to proceed would significantly burden government resources. JA 268.

Relator appealed to this Court, which held the appeal in abeyance pending the Supreme Court's decision in *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023) (*Polansky*). On June 16, 2023, the Supreme Court issued a decision in *Polansky* establishing the standard courts should apply when considering Section 3730(c)(2)(A) motions to dismiss. *See id.* at 435-39. The Court held that Federal Rule of Civil Procedure 41(a) provides the applicable standards for review of

motions to dismiss under Section 3730(c)(2)(A). *Id.* at 435-36. Where, as here, the government moves to dismiss prior to the filing of an answer or summary judgment motion, the Court explained, "Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role." *Id.* at 436 n.4. Even when the government moves to dismiss after an answer or summary judgment motion is filed, the Court emphasized that Rule 41 requires dismissal "in all but the most exceptional cases." *Id.* at 437. Thus, although the FCA "requires notice and an opportunity for a hearing before a Subparagraph (2)(A) dismissal can take place," when the motion to dismiss is filed before an answer or summary judgment motion, the only question for a court to consider is whether dismissal would violate "'bedrock constitutional constraints on Government action.'" *See id* at 436 n.4 (quoting *Polansky v. Executive Health Res., Inc.,* 17 F.4th 376, 390 n.16 (3d Cir. 2021)). Here, application of the Rule 41 standard mandates affirmance of the district court's order granting the government's motion to dismiss.

On appeal, relator primarily contends that the district court's dismissal of his case without conducting an in-person hearing violated the FCA. Relator Br. 12-26. Neither the FCA's plain language, 31 U.S.C. 3730(c)(2)(A), nor the Supreme Court's decision in *Polansky* requires in-person hearings, and relator has no due process right to procedures beyond what Congress provided in the FCA. The district court's dismissal of relator's case should accordingly be affirmed.

## STATEMENT OF JURISDICTION

Relator brought this qui tam action on behalf of the United States under the FCA, 31 U.S.C. 3729 *et seq.* The district court had jurisdiction under 28 U.S.C. 1331. The court granted the United States' motion to dismiss the action on December 17, 2021. JA 264. Relator filed a timely notice of appeal on January 13, 2022. JA 270. This Court has jurisdiction over the appeal under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly granted the government's motion to dismiss this FCA action under 31 U.S.C. 3730(c)(2)(A).

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

1. Under the FCA, 31 U.S.C. 3729 *et seq.*, a private person (known as a "relator") may file a qui tam action on behalf of the United States against any person who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. 3729(a), 3730(b)(1). The government may intervene and take over the relator's action after it has received the complaint and the relator's material evidence and information. 31 U.S.C. 3730(b)(2)-(4), (c)(1). If the government declines to intervene, the relator may conduct the litigation, although "the injury they assert is exclusively to the Government," and the United States is always a "'real party in interest'" in the case. *Polansky*, 599 U.S. at 425 (quoting *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009)); 31 U.S.C.

3730(b)(4)(B).  In either event, the relator receives a share of any proceeds from the claims he alleges in the litigation.  *See* 31 U.S.C. 3730(d).

Even if the government initially declines to intervene, the FCA provides a variety of mechanisms that facilitate governmental control over the suit brought in the United States' name.  For example, the government may intervene later "upon a showing of good cause."  31 U.S.C. 3730(c)(3).  The government may also "settle the action with the defendant notwithstanding the objections" of a relator "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances."  31 U.S.C. 3730(c)(2)(B).  And the government may prevent a relator from voluntarily settling or dismissing the action.  31 U.S.C. 3730(b)(1).  Finally, as relevant here, the government has authority to "dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."  31 U.S.C. 3730(c)(2)(A).

2.  Section 3729(a)(1)(G) of the FCA—known as the "reverse false claims provision"—creates liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to *an obligation* to pay or transmit money or property to the Government" or who "knowingly conceals or knowingly and improperly avoids or decreases *an obligation* to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(G) (emphases added).  Under the FCA, the

term "obligation" is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."  31 U.S.C. 3729(b)(3).

### B.    Factual Background and District Court Proceedings

1.  Relator John Doe filed this FCA qui tam action alleging that defendant Credit Suisse failed to comply with requirements to disclose certain criminal conduct to the United States, thereby decreasing the criminal penalty Credit Suisse was required to pay under a plea agreement to resolve criminal charges brought by the United States against it in *United States v. Credit Suisse*, No. 1:14-cr-188 (E.D. Va.).  *See* JA 4-10.  In the criminal case, Credit Suisse pled guilty to one count of conspiracy to commit offenses against the United States through aiding, assisting, procuring, counseling, and advising the preparation and presentation of false income tax returns to the Internal Revenue Service.  Plea Agreement, Statement of Facts,  JA 60-93.  The United States District Court for the Eastern District of Virginia entered the plea agreement on May 19, 2014.  JA 60.

As set forth in the statement of facts that accompanied the plea agreement, for decades, Credit Suisse had operated an illegal cross-border banking business through which it helped thousands of U.S. clients in opening and maintaining undeclared accounts and hiding offshore assets and income.  JA 79-80.  Under the plea agreement, Credit Suisse was required to make ongoing efforts to identify U.S. citizen

accounts that were part of the illegal banking operation and to provide the government with testimony and information regarding that operation. *See* JA 64-65. Credit Suisse also agreed to pay criminal fines to the U.S. Treasury and restitution to the Internal Revenue Service totaling over $1.8 billion. JA 64.

2. Relator John Doe, a former employee of defendant Credit Suisse, filed this qui tam action on February 26, 2021. JA 1-2. The United States declined to intervene in the action on October 29, 2021. JA 15. In accordance with the government's decision, the district court issued an order unsealing the complaint and directing relator to serve it upon Credit Suisse. JA 20.

On November 4, 2021, after engaging with relator and considering his objections, the United States filed a motion to dismiss relator's action pursuant to Section 3730(c)(2)(A). JA 24, JA 237. The government cited its conclusion that relator's allegations fail to state a cognizable claim under the FCA, the action's interference with ongoing government activity related to Credit Suisse's obligations under the plea agreement, the significant burden on government resources that would be caused by continued litigation, and the need to protect privileged information as grounds for the motion. JA 34-38, JA 243-250. The government determined that relator's allegations fail to state a claim because FCA actions cannot be predicated on unassessed potential penalties and fines. JA 34-35. In addition, the government explained that allowing relator's action to proceed would effectively allow a private citizen to use the FCA to relitigate the merits of a criminal plea agreement and that

such concerns were "all the more acute" here, "where the Relator's case threatens to interfere with ongoing discussions with Credit Suisse regarding the identification and remediation of remaining Swiss accounts held by U.S. citizens." JA 36. Finally, the government cited the "significant burden" that litigation of relator's case imposed on its resources and the potential intrusion on privileged information relating to prosecutorial decision-making. JA 37-38.

The district court set a hearing on the motion for December 3, 2021. JA ii. In response, relator filed a motion to continue the hearing until January 14, 2022 (JA 43), a motion to transfer the case from the Alexandria Division to the Norfolk Division of the U.S. District Court for the Eastern District of Virginia (JA 47), and an opposition to the motion to dismiss (JA 139). The government opposed relator's motion to transfer on the grounds that relator's only asserted basis for venue in Norfolk—that Judge Smith, who presided over entry of the plea agreement in a related criminal case seven years earlier in the Alexandria Division, was now sitting in the Norfolk Division—had no bearing on proper venue under 28 U.S.C. 1391. *See* JA 231. The government further contended that relator himself filed the present action in the Alexandria Division, that his request was untimely, and that "all considerations of convenience and fairness" weighed against transfer. JA 227-234.

The government also opposed relator's motion to continue the hearing, noting that relator had not shown that all of his counsel were unavailable on December 3 or shortly thereafter, and that in any event, the FCA does not require an in-person

hearing.  JA 236-238.  The government explained that, where, as here, relator has had the opportunity to provide a written submission in opposition to the motion for the court's consideration, Section 3730(c)(2)(A)'s hearing requirement is satisfied.  JA 236-238.

3. On December 1, 2021, the district court set the motions for a hearing on the pleadings on December 3, 2021.  JA iii.  On December 17, 2021, following full briefing on all pending motions, the district court granted the government's motion to dismiss.  JA 264-269.  Among other things, the court determined that the government had correctly concluded that relator had failed to state a claim for a violation of the reverse false claims provision of the FCA.  JA 266-267.  The court found that relator has "identified no required obligation for Credit Suisse to pay a penalty to the Government," and that his "speculative allegations fail as a matter of law" because an unassessed penalty is not an "established obligation" within the meaning of the FCA's reverse false claims provision.  JA 267.

The court further determined that relator's action, "ostensibly on behalf of the United States and in parallel with the ongoing implementation of the plea agreement, would threaten the Department of Justice's ability to continue working with Credit Suisse in pursuit of uniquely governmental and federal interests."  JA 267-268.  The court held that this potential interference with the government's ongoing enforcement of the plea agreement standing alone was  "sufficient reason to dismiss."  JA 268. Finally, the court also credited the government's assessment that relator's qui tam

action, if allowed to proceed "would place a significant burden on Government resources," and noted that courts have "routinely held that preservation of Government resources is a valid purpose for dismissing a *qui tam* action." JA 268. The court thus granted the government's motion to dismiss relator's action. JA 268-269.

Relator appealed to this Court, which held the appeal in abeyance pending the Supreme Court's decision in *Polansky*. On June 16, 2023, the Supreme Court issued its decision in *Polansky*, holding that Federal Rule of Civil Procedure 41(a) provides the applicable standards for review of motions to dismiss under Section 3730(c)(2)(A), and explaining that where, as here, the government moves to dismiss before the filing of an answer or summary judgment motion, the trial court has "no adjudicatory role" other than to grant the government's motion. 599 U.S. at 435-36 & n.4.

## SUMMARY OF ARGUMENT

In *Polansky*, the Supreme Court held that Federal Rule of Civil Procedure 41(a) provides the applicable standard for review of motions to dismiss under Section 3730(c)(2)(A) of the FCA. Polansky, 599 U.S. 419, 435-36 (2023). The Court explained that when the government moves to dismiss prior to the filing of an answer or summary judgment motion, "Rule 41 entitles the movant to dismissal; the district court has no adjudicatory role." *Id.* at 436 n.4.

The Supreme Court's decision in *Polansky* mandates affirmance of the district court's judgment. Although the FCA "requires notice and an opportunity for a

hearing before a Subparagraph (2)(A) dismissal can take place," where, as here, the government files a motion to dismiss before an answer or summary judgment motion is filed, the only potential question for a court to consider is whether dismissal would violate "'bedrock constitutional constraints on Government action.'" *See* 599 U.S. 436 n.4 (quoting *Polansky v. Executive Health Resources, Inc.,* 17 F.4th 376, 390 n.16 (3d Cir. 2021)). Thus, under *Polansky*, absent a credible showing by a relator that the government's dismissal of a case violates the Constitution, a court must grant the motion to dismiss after notice and a hearing without engaging in judicial review of the government's reasons for dismissal.

Here, relator has not even alleged, much less shown, that the government's decision to dismiss his action violates any potentially applicable constitutional constraints. On appeal, relator instead primarily contends that the district court violated the FCA by deciding the government's motion to dismiss on the pleadings. As numerous courts have recognized, however, the text of the FCA does not require an in-person hearing. To the contrary, Section 3730(c)(2)(A) provides only for notice and "*an opportunity* for a hearing," 31 U.S.C. 3730(c)(2)(A) (emphasis added), without specifying the form of any hearing or the circumstances in which a hearing is (or is not) appropriate.

Relator nowhere grapples with the inconsistency between his interpretation of "hearing" in the FCA and the Supreme Court's holding that under the applicable Rule 41 standard, prior to the filing of an answer, the government is entitled to dismissal

and the courts have "no adjudicatory role." *Polansky*, 599 U.S. at 436 n.4. In contrast, construing the term "hearing" in Section 3730(c)(2)(A) to encompass written submissions is not only consistent with the plain text of the FCA and *Polansky*, but also provides relators with an adequate opportunity to make a credible showing through their pleadings that dismissal would violate constitutional constraints on government action.

Relator's contention that regardless of whether an in-person hearing is generally required under the FCA, the district court erred by not holding one in this case fares no better. Relator again ignores the clear import of *Polansky*, which clarified that in cases in which the government moves to dismiss prior to the filing of an answer, the court has no adjudicatory role absent a credible showing that dismissal would violate the Constitution. Relator had the opportunity to make such a showing in his opposition to the government's motion to dismiss, but failed to do so.

Relator's unsupported allegations (Br. 11) that the government's motion to dismiss "appears to be an attempt" to "stop discovery and insulate itself from questions about an inadequate investigation of Credit Suisse" not only fail to make a credible showing of a constitutional violation; they also support the district court's decision to grant the government's motion. As the government explained below, refuting such allegations, "would infringe on privileged information relating to prosecutorial decision-making and protected and inadmissible plea negotiations under Rule 410 of the Federal Rules of Evidence and Criminal Rule of Procedure 11(f)—

one reason why dismissal is appropriate here." JA 244. Thus, although the United States "vigorously disputes" such allegations, it was "constrained simply to note its disagreement with the Relator's accusations." JA 244. Notably, the district court agreed with the government that relator's action threatened to interfere with the government's "ongoing implementation of the plea agreement," which, standing alone, was "sufficient reason to dismiss." JA 267-268.

Finally, this Court should also reject relator's alternative argument that the district court erred by concluding that his complaint failed to state a claim under the reverse false claims provision of the FCA. The merits of relator's FCA claims are irrelevant to the disposition of the motion to dismiss. As *Polansky* makes clear, where, as here, the government moves to dismiss prior to the filing of an answer or summary judgment motion, the court must grant the motion without engaging in judicial review of the government's grounds for dismissal. It is therefore sufficient that the government concluded that dismissal was warranted, and consistent with *Polansky*, this Court should decline to scrutinize the bases for that conclusion. In order to affirm the district court's dismissal order, it is not necessary to address the merits of relator's claims, and indeed, the government may properly exercise its discretion to dismiss claims brought by relators in order to avoid having weak or problematic FCA claims adjudicated on the merits. The United States exercised that discretion here, and the district court's decision dismissing the relator's claims should accordingly be affirmed.

## STANDARD OF REVIEW

The court of appeals reviews de novo a district court's grant of a government motion to dismiss under Section 3730(c)(2)(A) of the FCA. *See Borzilleri v. Bayer Healthcare Pharm.*, 24 F.4th 32, 45 (1st Cir. 2022); *Chang v. Children's Advocacy Ctr. of Del.*, 938 F.3d 384, 386 (3d Cir. 2019).

## ARGUMENT

## THE DISTRICT COURT PROPERLY GRANTED THE UNITED STATES' MOTION TO DISMISS UNDER SECTION 3730(C)(2)(A).

In *Polansky*, 599 U.S. 419 (2023), the Supreme Court determined that Federal Rule of Civil Procedure 41(a) provides the applicable standard for review of a government motion to dismiss a relator's qui tam action under Section 3730(c)(2)(A) of the FCA. Pursuant to the Rule 41(a) standard, the government is entitled to dismissal and the district court plays no adjudicatory role where, as here, the defendant has not filed an answer or summary judgment motion. In this case, the district court's grant of the government's motion to dismiss readily satisfies the applicable standard.

### A. *Polansky* Mandates Affirmance of the District Court's Grant of the Government's Motion to Dismiss.

As the Supreme Court recently explained in *Polansky*, although relators are permitted to file qui tam actions, they act at all times "in the name of the Government," 31 U.S.C. 3730(b)(1), "the injury they assert is exclusively to the Government," and the suit remains at all times "one to vindicate the Government's

14

interests." *Polansky*, 599 U.S. at 424-25, 435.  In this case, however, relator seeks to proceed with an FCA claim over the objections of the United States, the party on whose behalf he is acting.  Where the government has concluded that its interests are best served by dismissing that claim, and moves to dismiss before the filing of an answer or a summary judgment motion, the district court has no adjudicatory role and must grant the government's motion absent a credible showing of a constitutional violation.  *Id.* at 436 & n.4.  Relator has not and cannot make such a showing.  The district court therefore correctly dismissed relator's qui tam action.

      1. *Polansky* requires affirmance of the district court's grant of the government's motion to dismiss.  In *Polansky*, the Supreme Court resolved a division among the circuits regarding the standard for reviewing government motions to dismiss under Section 3730(c)(2)(A) of the FCA and held that Federal Rule of Civil Procedure 41(a), which governs voluntary dismissals in federal civil litigation, provides the applicable standard.  599 U.S. at 435-39.  As the Court explained, prior to the filing of an answer or summary judgment motion, "Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role."  *Id.* at 436 n.4.

      The Court observed that because the FCA "requires notice and an opportunity for a hearing before a Subparagraph (2)(A) dismissal can take place," the district court "must use that procedural framework to apply Rule 41's standards."  *Polansky*, 599 U.S. at 436.  The Court acknowledged that application of this framework at the pre-answer stage raises the question of what purpose a hearing would serve, and noted

15

that the Third Circuit had "suggested that Rule 41's standards 'rest atop the foundation of bedrock constitutional constraints on Government action.'" *Id.* at 436 n.4 (quoting *Polansky v. Executive Health Res., Inc.*, 17 F.4th 376, 390 n.16 (3d Cir. 2021)). The Court stated that a hearing, even pre-answer, therefore "might inquire into allegations that a dismissal 'violate[s] the relator's rights to due process or equal protection.'" *Id.* Because Polansky did not raise such a claim, however, the Court did "not consider the circumstances in which, or procedures by which, a court should find the Constitution to prevent the Government from dismissing a *qui tam* action." *Id.*

Accordingly, where, as here, the government moves to dismiss a relator's action under Section 3730(c)(2)(A) before an answer or summary judgment motion is filed, the only question for a court to consider is whether dismissal would violate "'bedrock constitutional constraints on Government action.'" *Polansky*, 599 U.S. at 436 n.4 (quoting *Polansky v. Executive Health Res.*, 17 F.4th at 390 n.16). If not, then the court must grant the motion without any judicial review of the merits of the government's grounds for dismissal.[1] *See id.*

The Supreme Court further held that even where the government seeks dismissal after a summary judgment motion has been filed, Section 3730(c)(2)(A)

---

[1] Under Rule 41(a)(1)(A), "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A).

motions "will satisfy Rule 41 in all but the most exceptional cases," and "the Government's views are entitled to substantial deference." *Polansky*, 599 U.S. at 437. Given that qui tam actions are brought "on behalf of and in the name of the Government" and allege injury solely to the Government, and that following intervention, the Government "assumes primary responsibility for the action," the Court emphasized that a district court "should think several times over before denying a motion to dismiss." *Id.* at 437-38.

2.  In this case, the government filed its motion to dismiss before an answer or summary judgment motion was filed.  JA 24-25.  Relator had the opportunity to (and did) file a written opposition with exhibits prior to the district court's disposition of the government's motion to dismiss.  *See* JA 139-226.  The government noticed the motion for hearing, and the district court, after full briefing, determined that it would hold a hearing on the written pleadings.  JA iii.

In opposing the government's motion, relator contended that the government's asserted grounds for dismissal were pretextual and improper, but he did not attempt to make any showing that a dismissal would violate the Constitution.  *See* JA 139-226. Indeed, relator has not argued that dismissal would violate his equal protection or substantive due process rights, nor is there any basis for him to do so.  *Cf. Polansky*, 599 U.S. at 436 n.4.  Following the Supreme Court's decision in *Polansky*, this should be the end of the court's analysis:  "Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role."  *Id.*

## B. The FCA Does Not Require an In-Person Hearing.

On appeal, relator does not suggest that the district court's dismissal of his action violated his substantive constitutional rights; rather, he contends (Br. 12-21) that the district court did not afford him an "opportunity for a hearing" as required under Section 3730(c)(2)(A) of the FCA. Relator's argument stems from the flawed premise that Section 3730(c)(2)(A) mandates in-person proceedings—either oral argument or an evidentiary hearing—in every case where the relator requests it. Nothing in the FCA supports reading the term "hearing" in Section 3730(c)(2)(A) to require in-person proceedings, however, and such a reading is incompatible with the Supreme Court's recent decision in *Polansky*.

Relator's alternative argument that even if an in-person hearing is not required in every case, the district court erred by deciding the motion on the pleadings under the circumstances of this case also lacks merit. Where, as here, the government moves to dismiss prior to the filing of an answer or summary judgment motion, and relator makes no credible showing of a constitutional violation in his opposition to the motion, an in-person hearing is not only unnecessary, but would also be a waste of judicial resources.

### 1. Neither the text nor the structure of the FCA requires in-person hearings.

Contrary to relator's arguments (Br. 12-18), neither the text nor the structure of the FCA supports reading the term "hearing" in Section 3730(c)(2)(A) to require an

"in-person hearing." The text of Section 3730(c)(2)(A) requires only that the relator be given notice of the government's motion to dismiss and "an opportunity for a hearing on the motion." 31 U.S.C. 3730(c)(2)(A). That provision does not specify or suggest that in-person proceedings are required.

Numerous courts, including this Court, have held that the term "hearing" in the FCA—specifically Sections 3730(c)(2)(A) or Section 3730(e)(4)(A)[2]—encompasses a hearing on written papers. *Brutus Trading LLC v. Standard Chartered Bank*, No. 20-2578, 2023 WL 5344973 at *2-*3 (2d Cir. Aug. 21, 2023) (rejecting relator's argument that in-person hearing is required under Section 3730(c)(2)(A); "the district court met the hearing requirement by carefully considering the parties' written submissions"); *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994) ("hearing" in Section 3730(e)(4)(A) of FCA can include any civil proceeding, need not be formal live hearing); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652 (D.C. Cir. 1994) ("hearing" in Section 3730(e)(4)(A) includes hearing on written pleadings, "courts frequently employ" term "hearing" to "connote informal, 'paper' proceedings" (citing *United States v. Florida E. Coast Ry. Co.*, 410 U.S. 224, 239 (1973)); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v.*

---

[2] 31 U.S.C. 3730(e)(4)(A)(i) bars *qui tam* claims "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed[] . . . *in a Federal criminal, civil, or administrative hearing* in which the Government or its agent is a party." (emphasis added).

*Prudential Ins.*, 944 F.2d 1149, 1155-57 (3d Cir. 1991) (term "hearing" in Section

3730(e)(4)(A) of FCA "encompass[es] the full range of proceedings in a civil lawsuit"

and "does not necessarily take the form of a live, formal proceeding").[3]

This Court has already held that the term "hearing" under a related provision

of the FCA, Section 3730(e)(4)(A), encompasses not only in-person, formal

proceedings before a court, but also written filings in the context of a civil proceeding.

*See Siller*, 21 F.3d at 1350 (rejecting relator's contention that Section 3730(e)(4) applied

solely to disclosures in "live hearings"). No basis exists for construing that same term

differently in Section 3730(c)(2)(A). *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551

U.S. 224, 232 (2007) (noting that "identical words and phrases within the same statute

should normally be given the same meaning"). The district court thus afforded relator

an adequate "opportunity for a hearing," 31 U.S.C. 3730(c)(2)(A), when it gave him an

opportunity to file a brief in opposition to the government's motion in writing before

the motion was granted.

In addition, "[e]very circuit to consider the issue has determined that the

'hearing' requirements of [Federal] Rule [of Civil Procedure] 12 and Rule 56 do not

---

[3] Numerous district courts have likewise held that a hearing on the papers satisfies Section 3730(c)(2)(A)'s requirements. *See, e.g., United States ex rel. Vanderlan v. Jackson HMA, LLC*, No. 3:15-CV-767, 2020 WL 2323077, at *8, *13 (S.D. Miss. May 11, 2020) (collecting cases); *United States ex rel. Backer v. Cooperatieve Bank U.A.*, No. 17 Civ. 2708, 2019 WL 5593302, at *3 (S.D.N.Y. Oct. 30, 2019); *United States ex rel. May v. City of Dallas*, No. 3:13-CV-4194-N-BN, 2014 WL 5454819, at *4 (N.D. Tex. Oct. 27, 2014).

mean that an oral hearing is necessary, but only require that a party be given the opportunity to present its views to the court." *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 315-16 (per curiam) (2d Cir. 1998) (citing cases); *see, e.g., Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994) (oral hearing on summary judgment at discretion of trial court); *Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (per curiam) (8th Cir. 1992); *Arrieta–Gimenez v. Arrieta–Negron*, 859 F.2d 1033, 1042 (1st Cir. 1988); *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir. 1988). Relator's argument (Br. 18) that 1993 amendments to Federal Rule of Civil Procedure 37 changed the phrase "opportunity for [a] hearing" to "an opportunity to be heard" to "'make clear that the court can consider such questions on written submissions as well as on oral hearings'" is therefore unavailing. Relator ignores that numerous courts of appeals, including this Court, had already interpreted the term "hearing" in other Federal Rules of Civil Procedure as encompassing hearings on written submissions.

Indeed, in construing Rule 56(c) in 1983, which then referred to "the time fixed for the hearing," the Eleventh Circuit explained that it "is now well established that Rule 56 does not necessarily contemplate an oral hearing"; rather, if "the adverse party is given the 10-day notice and afforded an opportunity to submit materials in opposition to the motion, then the party 'has been heard within the meaning of Rule 56.'" *Moore v. Florida,* 703 F.2d 516, 519 (11th Cir.1983) (per curiam). The amendment to Rule 37 cited by relator thus reflects courts of appeals' interpretation of "hearing"

21

in other federal rules of civil procedure; it does not support the limitation of the term

to live, in-person proceedings. As the Third Circuit noted in rejecting a relator's

similarly restrictive reading of "hearing" in Section 3730(e)(4)(A) of the FCA, "in

other civil contexts the term 'hearing' does not necessarily take the form of a live,

formal proceeding." *Stinson*, 944 F.2d at 1155. For example, Federal Rule of Civil

Procedure 56(d) "refers to 'the hearing of the motion' for summary judgment, but we

have held that "hearing" in Rule 56 does not require that an oral hearing be held

before judgment is entered." *Id.*

Relator's argument that Section 3730(c)(2)(A) requires a live hearing also

cannot be squared with the Supreme Court's holding in *Polansky*. Relator contends

that *Polansky* "appears to confirm that a hearing is required, even for a case, like this

one, which is dismissed pre-answer," Br. 20, but that begs the question whether the

hearing can be on the pleadings. Moreover, relator fails to grapple with the Supreme

Court's holding that the Rule 41(a) standard applies to review of government motions

to dismiss under Section 3730(c)(2)(A) and that accordingly, pre-answer, the

government is entitled to dismissal and the court plays "no adjudicatory role."

*Polansky*, 599 U.S. at 436 n.4.

Relator emphasizes the Supreme Court's reference to the court's role "*at the

hearing the FCA requires*" (Br. 19), but as demonstrated above, the "hearing the FCA

requires" encompasses a hearing on the written pleadings. And the Supreme Court's

conclusion that where the government moves to dismiss pre-answer, the court need

not engage in judicial review of the government's grounds for dismissal unless the relator has made a colorable showing that dismissal would violate "bedrock constitutional constraints on Government action," *Polansky*, 599 U.S. at 436 n.4 (internal quotation marks omitted), supports that interpretation. Under *Polansky*, a district court can hold a hearing on the written pleadings, and if the relator makes a credible showing of a constitutional violation, the court can then determine whether oral argument or an evidentiary hearing is necessary. In contrast, relator's interpretation would require district courts to waste judicial resources by holding live hearings in which they are prohibited from playing any adjudicatory role.

The Fifth Circuit's decision in *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, 4 F.4th 255 (5th Cir. 2021), upon which relator relies (Br. 16-17), fails to advance his argument. As an initial matter, the Court did not decide whether in-person evidentiary hearings were generally required under Section 3730(c)(2)(A) because it determined that the relator did get a hearing at which it had the opportunity to present evidence. *Id.* at 265. ("While some type of actual hearing is required, we need not decide the precise bounds of the government's discretion to dismiss *qui tam* lawsuits."). In any event, *Health Choice* preceded the Supreme Court's decision in *Polansky*, where the Court confirmed that absent a colorable showing by a relator that dismissal would violate his constitutional rights, district courts should grant government dismissal motions filed prior to a defendant's answer or summary judgment motion without scrutinizing the government's grounds for dismissal.

*Polansky*, 599 U.S. at 436 n.4. *Polansky* thus overruled the Fifth Circuit's view that the provision for a hearing in Section 3730(c)(2)(A) means district courts must perform some adjudicatory role.

### 2. A hearing on the pleadings satisfies any potential due process interest that relator has in his qui tam action.

Relator also contends (Br. 13-14) that the FCA, by "effecting a partial assignment [to relators] of the Government's damages claim," *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000), provides relators with a property interest in qui tam suits. That argument does not demonstrate that a court must conduct an in-person hearing before dismissing a relator's qui tam suit on the government's motion under Section 3730(c)(2)(A).

Regardless of whether relator has a property interest in a qui tam cause of action, that interest does not become a vested property right unless or until final judgment is entered. *See, e.g., Ileto v. Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009). Moreover, because a qui tam action "is on behalf of and in the name of the Government," and "alleges injury to the Government alone," *Polansky*, 599 U.S. at 437, the relator's interests are subject to the limitations that Congress has chosen to impose. *See Brooks v. Dunlop Mfg. Inc.*, 702 F.3d 624, 632 (Fed. Cir. 2012). Indeed, "a *qui tam* plaintiff has 'no vested right' and his 'privilege of conducting the suit on behalf of the United States and sharing in the proceeds of any judgment recovered, [i]s an award of statutory creation, which, prior to final judgment, [i]s wholly within the

control of Congress.'" *Id.* (alterations in original) (quoting *United States ex rel. Rodriguez v. Weekly Publ'ns, Inc.*, 144 F.2d 186, 188 (2d Cir. 1944)). Thus, any procedural due process interest that relator possesses in his qui tam action is defined, and limited, by Congress in the FCA; relator is not entitled to any *additional* procedures beyond those specified in the text of the statute that confers the right to pursue a qui tam suit in the first place. *See Brooks*, 702 F.3d at 632; *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577-78 (1972) (due process property interests "are not created by the Constitution"; "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source" such as the governing statute); *FCC v. WJR, The Goodwill Station, Inc.*, 337 U.S. 267, 276-77 (1949) (due process clause does not require oral argument; rather Constitution "has left wide discretion to Congress in creating the procedures to be followed in both administrative and judicial proceedings").

Relator therefore misses the mark (Br. 14-16) by arguing that the term "hearing" in Section 3730(c)(2)(A) must be interpreted to require in-person proceedings consistent with procedural due process. Any potential due process interest on relator's part does not affect the construction of the term "hearing" in Section 3730(c)(2)(A). To the contrary, "the circuit courts that have addressed the question of whether an oral hearing is required on motions to dismiss in civil cases have uniformly held that no oral hearing is required by the Due Process Clause." *Greene*, 136 F.3d at 316; *see WJR*, 337 U.S. at 267-77.

Moreover, assuming relator had a property interest in his qui tam action, he thus received all the process that was due to him before it was dismissed. *See Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (explaining in a sanctions case that "an opportunity to be heard does not require an oral or evidentiary hearing" because "[t]he opportunity to brief the issue fully satisfies due process requirements"); *Greene*, 136 F.3d at 316 (Due Process Clause does not require oral hearing, collecting cases). Here, relator received notice and a hearing on the pleadings. JA iii, JA 24-25, JA 139-226. Accordingly, Section 3730(c)(2)(A) and any applicable due process requirement were fully satisfied.

Relator's reliance (Br. 14) on *Goldberg v. Kelly*, 397 U.S. 254 (1970), to support his due process argument is therefore misplaced. As the Supreme Court explained, *Goldberg* involved "the termination of welfare benefits," which "are a matter of statutory entitlement for persons qualified to receive them." 397 U.S. at 261-62. The Court emphasized that "the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." *Id.* at 264. Relator, in contrast, is not threatened with deprivation of a "means by which to live" by the government's motion to dismiss, nor is he entitled to any recovery from an FCA suit unless and until he obtains a favorable judgment.

Due process principles therefore do not support relator's view that the "opportunity for a hearing" provided in Section 3730(c)(2)(A) must be understood to require an in-person hearing in all cases.

### 3. The district court properly concluded that the circumstances of this case did not warrant an in-person hearing.

As discussed, the government moved to dismiss pre-answer or summary judgment motion, and relator did not allege, must less establish, that dismissal of his action would violate his equal protection rights or that the government had engaged in conduct so "egregious" that it would "shock the conscience"—the standard that the Supreme Court has held applicable to executive action under the Due Process Clause. *County of Sacramento* v. *Lewis*, 523 U.S. 833, 846, 855 (1998), *Tri–County Paving, Inc. v. Ashe County,* 281 F.3d 430, 440 (4th Cir. 2002) (substantive due process claim requires, *inter alia*, showing of government action "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency") (quoting *Sylvia Dev. Corp. v. Calvert County* 48 F.3d 810, 827 (4th Cir. 1995)); *see Polansky*, 599 U.S. at 436 n.4. Nor does relator argue on appeal that he made such a showing; rather, he contends (Br. 21) that an in-person hearing is necessary in his case because the government's reasons for dismissal were "illegitimate." Thus, under *Polansky*, this Court may not review the government's reasons for dismissal. Relator's contention that regardless of whether an in-person hearing is generally required under the FCA, the district court erred by not holding one in this case therefore lacks merit.

No further analysis is needed to reject relator's contention that an in-person hearing is required. Relator's unsupported allegations (Br. 22-23) that "the Government's true motive for dismissal, at least in part, was to insulate itself from scrutiny about its inadequate 2014 investigation of Credit Suisse" do not advance his position. As an initial matter, relator has not alleged that the government's dismissal violates his constitutional rights, and thus this Court should affirm the district court's judgment without further analysis consistent with the Supreme Court's decision in *Polansky*. In any event, the district court properly rejected relator's allegations as speculative and concluded that the government's reasons for dismissal were legitimate and non-pretextual. JA 266-268.

On appeal, relator cites (Br. 7-9, 23) a March 2023 Senate Finance Committee Report of its investigation into whether Credit Suisse had complied with its 2014 plea agreement to support his allegations. That report post-dates dismissal of relator's qui tam action and thus has no relevance on appeal. Moreover, relator's allegation (Br. 23) of a "lapse in oversight" by the Department of Justice in plea negotiations with Credit Suisse does not provide any basis for denying the government's motion to dismiss relator's qui tam suit. The Senate Report does not refute any of the government's grounds for dismissal, and, even if relator could prove a lapse in oversight with respect to the government's plea negotiations with Credit Suisse, that would not establish a violation of his constitutional rights.

As the government argued below (*see* JA 244-245), relator's allegations regarding lack of adequate prosecutorial oversight of plea negotiations with Credit Suisse appear nowhere in his qui tam complaint. *See* JA 9-10 (sole count of complaint alleges fraud by Credit Suisse). In any event, such allegations do not establish a sufficient basis to compel an in-person hearing on the government's motion to dismiss. In district court, relator alleged that Department of Justice prosecutors failed to inform the court supervising the plea agreement of evidence that he provided, thereby allowing Credit Suisse to continue to engage in the conspiracy to which it had pled guilty. JA 141-143. The government "vigorously dispute[d] the Relator's accusations of misconduct," but explained that "because refuting those accusations would infringe on privileged information relating to prosecutorial decision-making and protected and inadmissible plea negotiations," which is "one reason why dismissal is appropriate here," the government "is constrained simply to note its disagreement with the Relator's accusations." JA 244.

In granting the motion to dismiss, the district court properly recognized that an FCA action is not the proper mechanism to address alleged lack of oversight by government prosecutors. Moreover, it is telling that relator waited seven years to raise these allegations and did so for the first time only after the government filed a motion to dismiss. Rather than support his opposition to the motion to dismiss, relator's allegations demonstrate the validity of one of the main reasons the government sought dismissal—*i.e.*, that relator's action would interfere with ongoing discussions

29

between the United States and Credit Suisse regarding Credit Suisse's obligations under the plea agreement.

Relator therefore fails to provide any basis—much less the requisite credible showing of a constitutional violation—for this Court to engage in judicial review of the government's grounds for dismissal or to remand for an in-person hearing. In any event, even assuming *arguendo* such review were appropriate, the district court properly concluded that the government's reasons for dismissal were reasonable.

First, the court determined that the government had correctly concluded that relator had failed to state a claim for a violation of the reverse false claims provision of the FCA. JA 266-267. The court found that relator has "identified no required obligation for Credit Suisse to pay a penalty to the Government," and that his "speculative allegations fail as a matter of law" because an unassessed penalty is not an "'established obligation'" within the meaning of the FCA's reverse false claims provision. JA 267. As discussed further below (*infra* Section C), even in a case where the government moves to dismiss after the filing of an answer or summary judgment motion and some review may be appropriate, the court would not be required to determine the merits of the relator's claims; rather its inquiry would be limited to whether the government reasonably concluded that relator did not state a claim. As the district court's analysis demonstrates, the government's conclusion was at minimum reasonable.

Second, the district court found that "Relator's case threatens to interfere with ongoing discussions with Credit Suisse regarding the identification and remediation of remaining Swiss accounts held by U.S. citizens," and with "the ongoing implementation of the plea agreement." JA 267-268. The court concluded that relator's action would thus "threaten the Department of Justice's ability to continue working with Credit Suisse in pursuit of uniquely governmental and federal interests." JA 268. The court further determined that this factor standing alone was "sufficient reason to dismiss." JA 268. Relator's continued allegations (Br. 23) on appeal of a "lapse in oversight" by government prosecutors only underscore that the district court reasonably determined that allowing this qui tam action to proceed would interfere with ongoing discussions between the government and Credit Suisse involving the 2014 plea agreement and would allow relator to insert himself into a criminal plea negotiation years after the plea was entered in court.

Finally, the court found that relator's qui tam action would place significant burdens on government resources and observed that courts have routinely held that preservation of such resources is a valid governmental purpose. JA 268. Relator argues (Br. 23) that conserving resources "is a legitimate justification only when the potential litigation burden is many times greater than the potential recovery." But here again, relator ignores *Polansky*, where the Supreme Court made clear that even in a case where review of the government's reasons for dismissal may be appropriate, a relator's "competing assessment" of litigation benefits and burdens cannot "outweigh

31

the Government's reasonable view of the suit's costs and benefits." 599 U.S. at 438.

Relator also erroneously faults the government for allegedly failing to meet its burden

of showing that his qui tam case will likely entail discovery of privileged materials (Br.

25). As the government explained (JA 249-250), relator's speculative allegations that

Credit Suisse would have been subject to a higher criminal fine had it not fraudulently

concealed additional accounts that were part of the conspiracy to which Credit Suisse

pled guilty by their nature would require inquiry into prosecutors' internal decision-

making processes. As *Polansky* confirms, these types of assessments by the

government are "entitled to substantial deference" at any stage of a case, and cannot

provide a basis for the relator to challenge the government's dismissal decision where,

as here, the government sought dismissal pre-answer or summary judgment motion.

599 U.S. at 437.

### C. This Court Need Not Decide Whether Relator Stated a Viable Claim Under the FCA.

Relator contends in the alternative (Br. 26-33) that "[i]f this Court is inclined to

reach the issue," it should hold that relator stated a claim under the reverse false

claims provision of the FCA. This Court should decline relator's invitation to reach

the issue. As discussed, under the applicable Rule 41(a)(1) standard, there is no

authority for this Court to review any of the government's grounds for dismissal.

Absent a credible showing by relator of a constitutional violation, the government is

entitled to dismissal, and neither the district court nor this Court plays any adjudicatory role. *Polansky*, 599 U.S. at 436 n.4.

Moreover, even in circumstances where the government seeks to dismiss following the filing of an answer or a summary judgment motion and review of the government's grounds for dismissal may be appropriate, the only question before the Court would be whether the government reasonably concluded that relator did not state a claim. There is no occasion or reason for the Court to decide whether relator's "reverse" FCA claims are viable on the merits. Indeed, one valid reason the government may seek dismissal of a qui tam suit under Section 3730(c)(2)(A) is to avoid a ruling on the merits of FCA claims that may be weak or present difficult legal questions that could impair the government's interests in future cases. The government is not required to demonstrate that such claims lack merit in order to exercise its discretion to control litigation brought on its behalf.

# CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision granting the United States' motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

JESSICA D. ABER
   *United States Attorney*

CHARLES W. SCARBOROUGH
   *(202) 514-1927*

   /s/ Stephanie R. Marcus
STEPHANIE R. MARCUS
 (D.C. Bar No. 433701)
   *(202) 514-1633*
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7539*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue, N.W.*
   *Washington, DC 20530-0001*

OCTOBER 2023

## STATEMENT REGARDING ORAL ARGUMENT

The district court properly granted the government's motion to dismiss, and the government does not believe that oral argument is necessary in this case. If this Court determines that oral argument would be helpful to its resolution of the appeal, however, the government stands ready to present argument.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(c), I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. 32(a)(6). The word processing program (Word for Microsoft 365) used to prepare the brief reports that the brief is 8,451 words long. The brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 with Garamond, 14 point font.

/s/ Stephanie R. Marcus
Stephanie R. Marcus

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2023, I electronically filed the foregoing

brief with the Clerk of Court for the United States Court of Appeals for the Fourth

Circuit by using the appellate CM/ECF system. Counsel of record are registered

CM/ECF users and I further certify that I electronically served the foregoing brief on

counsel of record via the CM/ECF system on October 30, 2023.


                                        /s/  Stephanie R. Marcus
                                           Stephanie R. Marcus