**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1054

UNITED STATES EX REL. JOHN DOE

Plaintiff – Appellant,

v.

CREDIT SUISSE AG,

Defendant – Appellee,

UNITED STATES OF AMERICA,

Party-in-Interest – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:21-cv-00224-CMH-IDD)

Argued: May 8, 2024                    Decided: August 29, 2024

Before GREGORY and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge

Affirmed by published opinion. Senior Judge Floyd wrote the opinion in which Judge Gregory joined in full and Judge Quattlebaum concurred in the judgment. Judge Quattlebaum wrote a separate opinion dissenting in part and concurring in part.

**ARGUED:** Jeffrey A. Lamken, MOLOLAMKEN, LLP, Washington, D.C., for Appellant. Stephanie Robin Marcus, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Matthew Scott Owen, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellees.

**ON BRIEF:** Jeffrey A. Neiman, Fort Lauderdale, Florida, Jeffrey E. Marcus, Brandon S. Floch, MARCUS NEIMAN RASHBAUM & PINEIRO LLP, Miami, Florida, for Appellant. Brian M. Boynton, Principal Deputy Assistant Attorney General, Charles W. Scarborough, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee United States. Craig S. Primis, Meredith M. Pohl, Joseph M. Capobianco, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellee Credit Suisse AG.

———————————

FLOYD, Senior Circuit Judge:

A decade ago, the bank Credit Suisse pleaded guilty to conspiracy to aid U.S. taxpayers in filing false income tax returns. Under a plea agreement, Credit Suisse paid a criminal fine of some $1.3 billion and promised to work with the government to prevent customers from shielding offshore assets. John Doe, a former employee of Credit Suisse, filed this action alleging the bank failed to disclose its continued criminal conduct to the United States and thus avoided paying a larger penalty. Doe brought the action as a qui tam suit, meaning he sued on the government's behalf, alleging violations of the False Claims Act. The United States, as the real party in interest, moved to dismiss the action pursuant to 31 U.S.C. § 3730(c)(2)(A). That section provides: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an *opportunity for a hearing* on the motion." 31 U.S.C. § 3730(c)(2)(A) (emphasis added). The district court granted the motion to dismiss after considering written submissions from both sides. Doe argues on appeal the dismissal was improper because he was denied an actual "hearing" under Section 3730(c)(2)(A). For the reasons that follow, we affirm.

I.

The False Claims Act ("FCA") imposes civil liability for presenting false or fraudulent claims for payment to the federal government. 31 U.S.C. §§ 3729–3733. The FCA contains the "unusual" feature of allowing private parties, known as "relators," to sue

on the government's behalf by bringing qui tam actions.[1] *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023). After a relator files a complaint, the government has an opportunity to intervene and take over the action. 31 U.S.C. § 3730(b)(4)(A). If the government declines to intervene, the relator may continue to pursue the case. 31 U.S.C. § 3730(b)(4)(B). The injury asserted by the relator is "exclusively to the government," and the FCA "effects a partial assignment of the government's own damages claim." *Polansky*, 599 U.S. at 425 (cleaned up). The government maintains broad authority to "dismiss the action notwithstanding the objections" of the relator so long as "the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A).

The FCA also contains a "reverse false claims" provision, which creates liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government" or who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). "Obligation" is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from

---

[1] The term derives from the Latin phrase, *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which translates to "who as well for the king as for himself sues in this matter." *Qui Tam Action*, Black's Law Dictionary (12th ed. 2024). Qui tam actions are brought under statutes like the FCA that allow private persons to sue for a penalty, part of which the government receives if the suit is successful. *Id.*

4

the retention of any overpayment." 31 U.S.C. § 3729(b)(3). Relator John Doe, a former employee of Credit Suisse, filed this action under the "reverse false claims" provision of the FCA.

The case originated in a federal investigation into tax offenses, after which the U.S. Department of Justice charged Credit Suisse with one count of conspiracy for helping U.S. citizens shield assets and income from the Internal Revenue Service ("IRS"). In 2014, Credit Suisse accepted a plea agreement in which it pleaded guilty to the conspiracy charge, represented that its criminal conduct had ended in 2009, and agreed to pay criminal fines and restitution to the government totaling some $2 billion.

Doe's qui tam action, filed in 2021, alleged that Credit Suisse failed to disclose certain criminal conduct to the United States, thereby shielding itself from additional criminal penalties. Doe alleged that Credit Suisse continued to conspire with U.S. customers to conceal assets from the IRS even after the bank pleaded guilty. Doe claimed that Credit Suisse obtained a "$1.3 billion discount" on its criminal penalty by lying to a federal district court during the plea hearing. Opening Br. 12.

The government declined to intervene initially and soon thereafter moved to dismiss before any answer or summary judgment motion was filed.[2] The government sought dismissal because it concluded that Doe's allegations failed to state a claim cognizable

---

[2] This timing is important because, as explained below, if the government moves to dismiss before an answer or motion for summary judgment has been served, then Rule 41(a)(1) applies, which allows swift dismissal "without a court order." But after an answer or motion for summary judgment has been served, a higher standard (Rule 41(a)(2)) applies, and a court order is required in order to obtain dismissal.

under the FCA and that continued litigation of the action would "impair ongoing activity related to Credit Suisse's obligations under the plea agreement, strain Government resources, and intrude upon the Government's privileged or protected information." J.A. 266. Doe opposed the motion and requested an evidentiary hearing, contending that the government's reasons for wanting dismissal were improper. The district court denied Doe's request for a hearing and dismissed the action on the pleadings. The district court granted the dismissal because (1) Doe had not stated a claim under the FCA since Credit Suisse had no pre-existing obligation to pay additional penalties to the government and (2) the government had discretion to dismiss the action voluntarily under Rule 41 for the reasons it stated, including conserving government resources and preserving its ability to continue monitoring Credit Suisse.

The government argues this case should be affirmed on (2) alone: the court properly dismissed the action on the government's motion and no in-person hearing was required. The government urges that this Court need not reach (1) and decide whether Doe stated a viable claim under the FCA. The government argues that under the applicable Rule 41(a)(1) standard, a court has no authority to review the government's grounds for dismissal "absent a credible showing by a relator that the government's dismissal of a case violates the Constitution." Appellee Br. 11. The government has the discretion "to control litigation brought on its behalf" and is not required to disprove the merits of FCA claims to prevail in a motion to dismiss. Appellee Br. 33.

Credit Suisse agrees with the government's position but argues this case can and should be affirmed on (1): Doe's allegations were not cognizable under the FCA. The bank

says it had no established duty to pay a higher criminal fine than the sentence required and that Doe's allegations were purely speculative (*i.e.*, had Credit Suisse disclosed the information, it would have faced a steeper fine). Credit Suisse further argues that Doe has failed to identify a false statement in the plea agreement or colloquy and that Doe's claim is time-barred in any event. Credit Suisse agrees with the government that an in-person hearing is not required or warranted in this case.

After Doe appealed to this Court, the case was placed in abeyance pending the Supreme Court's decision in *Polansky*. The Supreme Court in *Polansky* issued two holdings, neither of which directly resolves this appeal. First, it held that the government may seek dismissal of an FCA action over a relator's objection as long as the government intervened at some point during the litigation, whether at the outset or later on. *Polansky*, 599 U.S. at 430. Second, the Court held that district courts faced with a motion to dismiss from the government should apply the rule generally governing the voluntary dismissal of suits: Federal Rule of Civil Procedure 41(a). *Id.* at 435–36.

But *Polansky* did not address the question presented here: What procedures satisfy the "hearing" requirement of 31 U.S.C. § 3730(c)(2)(A)? Do written submissions alone— the procedure used here—satisfy the requirement?

## II.

The applicable standard of review is not entirely clear from the case law. Doe and the government both say this Court should review de novo the district court's grant of the government's motion to dismiss under the FCA. They cite out-of-circuit cases in support of de novo review. *See Borzilleri v. Bayer Healthcare Pharm.*, 24 F.4th 32, 45 (1st Cir.

2022); *Chang v. Children's Advocacy Ctr. of Del.*, 938 F.3d 384, 386 (3d Cir. 2019). But the First Circuit appeared to question the appropriateness of de novo review, and the Third Circuit did not explain why de novo review applied. *See Borzilleri*, 24 F.4th at 45 n.11 ("Both parties appear to assume we will apply de novo review to the district court's decision on the government's motion to dismiss. Without the benefit of briefing on this subject, and in the absence of a developed consensus on this issue in our sister circuits, we make no judgment on the appropriateness of that assumption."); *Chang*, 938 F.3d at 386.

Credit Suisse says the applicable standard of review is abuse of discretion and cites *Polansky*, 599 U.S. at 429. *See also Polansky*, 599 U.S. at 438 ("A district court's Rule 41 order is generally reviewable under an abuse-of-discretion standard . . . ."). But *Polansky* concerned Rule 41(a)(2), which is a voluntary dismissal that happens after an answer or summary judgment motion has been served and which requires a "court order, on terms that the court considers proper." By contrast, here the dismissal happened at the pre-answer, pre-summary judgment stage, during which Rule 41(a)(1) applies, meaning no court order was required. Since, as explained more below, a district court "has no adjudicatory role" in deciding a Rule 41(a)(1) dismissal, abuse-of-discretion review does not entirely make sense either. How can a court abuse its discretion when it has no discretion to exercise in the first place?

We assume, without deciding, that our review is de novo. We save this question for another day since we would affirm under either standard of review.

III.

The district court satisfied the "hearing" requirement by considering the parties' written submissions, and dismissal was appropriate since Doe did not raise a colorable claim that doing so would violate his constitutional rights.  Again, the relevant FCA section states: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with *an opportunity for a hearing* on the motion."  31 U.S.C. § 3730(c)(2)(A) (emphasis added).  In a footnote in *Polansky*, the Supreme Court said that when the government seeks dismissal before an answer is filed, "Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role." *Polansky*, 599 U.S. at 436 n.4.  The Court did not address what "purpose" a hearing would serve given the court's de minimis role but suggested that it "might inquire into allegations that a dismissal 'violate[s] the relator's rights to due process or equal protection.'"  *Id.* (quoting *Polansky v. Exec. Health Res. Inc.*, 17 F.4th 376, 390 n.16 (3d Cir. 2021)).

Because Doe has not raised any colorable claim that his due process or equal protection rights have been violated, the district court's dismissal was proper.  Instead, Doe's only claimed error is, essentially, that the government sought dismissal for reasons he disagrees with.  But the purpose of a qui tam suit is to "vindicate the Government's interests."  *Id.* at 438.  In *Polansky*, the Supreme Court said the government merely needs to provide reasons for its assessment that the suit would not "vindicate" its interests, and "[a]bsent some extraordinary circumstance, that sort of showing is all that is needed for the Government to prevail."  *Id.*  Keep in mind that *Polansky* dealt with Rule 41(a)(2), which

is a dismissal that happens post-answer and requires a court order. Thus, here, in considering a Rule 41(a)(1) motion to dismiss, the government is entitled to even greater deference since no court order is required.

That still leaves the question of the meaning of "hearing" in 31 U.S.C. § 3730(c)(2)(A). On the one hand, Congress seemed to use that word intentionally. The statute does not use the more general "opportunity to be heard" phrasing, for instance. But we think the hearing requirement of Section 3730(c)(2)(A) can be satisfied with procedures short of a formal evidentiary hearing in a courtroom. This is so for several reasons.

First, other courts that have considered this question—several district courts and the Second Circuit in an unpublished opinion—have found that written submissions can satisfy the hearing requirement. *Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 WL 5344973, at *2 (2d Cir. Aug. 21, 2023) ("Here, the district court met the hearing requirement by carefully considering the parties' written submissions."); *United States ex rel. Vanderlan v. Jackson HMA, LLC*, No. 3:15-CV-767, 2020 WL 2323077, at *7–8 (S.D. Miss. May 11, 2020) (collecting cases).

Second, this Court and others have found that the word "hearing" in a nearby part of Section 3730 of the FCA encompasses civil proceedings involving written papers—not just live, formal hearings. That subsection, 3730(e)(4)(A), bars qui tam actions if the allegations were already publicly disclosed in a "criminal, civil, or administrative hearing." This Court concluded that the meaning of "hearing" in Section 3730(e)(4)(A) is "fluid[]" and that "an entire civil proceeding" can constitute a "hearing." *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994), *superseded on other*

10

grounds as recognized in *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 917 (4th Cir. 2013). The term "hearing" is not just limited to "live" proceedings before a judge. *Id.*; *see also United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652 (D.C. Cir. 1994) (noting that "hearing" can mean "informal, 'paper' proceedings"). Thus, we should similarly interpret the term "hearing" in the subsection relevant here, 3730(c)(2)(A). *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning."). Under *Siller*, then, a live, in-person court appearance is not required to satisfy the "hearing" requirement of Section 3730(c)(2)(A).

Third, *Polansky* confirmed that the government is entitled to "substantial deference" in opting to dismiss a qui tam action, which is litigated on behalf of and in the name of the government. 599 U.S. at 437. Even at the post-answer stage, when a dismissal requires a court order, a district court must "think several times over before denying a motion to dismiss." *Id.* at 438. Here, deference owed to the government is even greater because the government moved for dismissal at the pre-answer stage—when no court order is required and when "the district court has no adjudicatory role." *Id.* at 436 n.4. It would be illogical to require district courts to hold live, in-person evidentiary hearings when they have "no adjudicatory role" to play.

Doe has not made a colorable claim that the dismissal infringed upon his due process or equal protection rights; had Doe made such a claim, the district court might have decided to hold an in-person hearing. Instead, Doe only claims that the government's "true motive

for dismissal, at least in part, was to insulate itself from scrutiny about its inadequate 2014 investigation of Credit Suisse." Opening Br. 23. But that allegation, even if Doe could support it, does not establish a colorable constitutional violation warranting a hearing. Doe essentially wants to continue to press his qui tam suit as a means to second-guess and pry into the government's prosecutorial decisions. We reject the suggestion that a relator is entitled to a formal, in-person hearing "to convince the government not to end the case." *United States v. UCB, Inc.*, 970 F.3d 835, 850 (7th Cir. 2020) (quoting *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003)).

The district court noted the government's valid reasons for moving to dismiss the action and properly granted the motion after considering Doe's opposition brief. The government explained that litigating Doe's suit "would infringe on privileged information relating to prosecutorial decision-making and protected and inadmissible plea negotiations." JA 244. In addition, the litigation would "interfere with ongoing discussions between the United States and Credit Suisse regarding Credit Suisse's obligations under the plea agreement." Appellee Br. 29–30. Also, the government has the authority to weigh an action's "costs and benefits" and dismiss it where the government deems the litigation would be a waste of resources. *Polansky*, 599 U.S. at 428. These reasons alone were enough to grant the government's motion to dismiss under Rule 41(a). Doe had an opportunity to be heard when he submitted his opposition to the motion.

Lastly, we decline Credit Suisse's invitation to reach the merits of the district court's ruling. There is no need to address whether Doe validly stated a reverse FCA claim. The district court's consideration of the parties' arguments—even without an actual hearing—

12

was enough to satisfy the strictures of 31 U.S.C. § 3730(c)(2)(A) and Rule 41(a). The government does not need to disprove the validity of an FCA claim in order to dismiss it since the government has discretion to control litigation brought on its behalf and in its name.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

<em>AFFIRMED</em>

QUATTLEBAUM, Circuit Judge, dissenting in part and concurring in part and in the judgment:

I disagree with my friends in the majority that a district court's decision based on the papers submitted by the parties satisfies 31 U.S.C. § 3730(c)(2)(A)'s requirement of "an opportunity for a hearing." As the majority notes, Congress elected to use the term "hearing" in that provision; not the phrase an "opportunity to be heard." Maj. Op. at 10. To me, "hearing" requires, at a minimum, the opportunity to make oral arguments to a court. *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 (2000) ("the relator . . . is entitled to a hearing before voluntary dismissal and to a court determination of reasonableness before settlement, § 3730(c)(2)."); *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, 4 F.4th 255, 264–65 (5th Cir. 2021) (after interpreting the word "hearing" using dictionaries, stating that "some type of actual hearing is required"). The Supreme Court's recent *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023) decision seems to confirm that § 3730(c)(2)(A) requires an actual hearing. There, the Court addressed what standard should be used by a district court in ruling on a government's motion to dismiss a *qui tam* action before an answer is filed. The Court held that the appropriate standard derives from Federal Rule of Civil Procedure 41(a), which governs voluntary dismissals in ordinary civil litigation. *Id.* at 435. Under Rule 41(a), "[i]f the defendant has not yet served an answer or summary-judgment motion, the plaintiff need only file a notice of dismissal." *Id.* But the Court explained that "[t]he application of Rule 41 in the [False Claim Act] context will differ" from the normal operation of that rule. *Id.* at 436. That is because the FCA requires "notice and an

14

opportunity for a hearing" before dismissal. *Id.* "So the district court must use that procedural framework to apply Rule 41's standards." *Id.*

In reaching this conclusion, the Court seemed to recognize that applying Rule 41(a)'s limited adjudicatory role for courts when no answer has been filed to the FCA's hearing requirement might lead to some strange results. In fact, the Court discussed that very situation:

> The Court of Appeals briefly addressed the purpose of a hearing when dismissal is sought before an answer is filed. In that context, Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role. ***So what is the court supposed to do at the hearing the FCA requires?*** The Third Circuit suggested that Rule 41's standards "rest atop the foundation of bedrock constitutional constraints on Government action." So a hearing, whether pre- or post-answer, might inquire into allegations that a dismissal "violate[s] the relator's rights to due process or equal protection." But because Polansky has not raised a claim of that sort, we do not consider the circumstances in which, or procedures by which, a court should find the Constitution to prevent the Government from dismissing a qui tam action.

*Id.* at 437 n.4 (emphasis added) (internal citations omitted).

Nothing in *Polansky* suggests a court may forgo the FCA's hearing requirement. To the contrary, the decision seems to assume a hearing will take place. This tells me that under § 3730(c)(2)(A), the district court must hold a hearing on a government's motion to dismiss, even if no answer has been filed. True, this might produce some weird results. Seemingly, hearings would be required even when there is little or nothing for the court to do. That seems silly, or as the majority puts it, "illogical." Maj. Op. at 11. But if Congress passes an illogical statute, it's their job to fix it, not ours.

15

Besides, Congress may have had reasons for requiring hearings not expressed in the statute. For example, perhaps the hearing is designed to promote transparency, requiring the government to explain, and answer questions about, the decision to dismiss. Or perhaps the hearing is to at least ensure that the dismissal does not offend the constitutional issues identified in *Polansky*. But regardless, Congress mandated a hearing. Courts should not judicially write that requirement out of the FCA. In my view, the district court erred in not holding a hearing on the government's motion to dismiss.

That said, we must still consider whether that error was harmless—as we must do for all errors. *See* 28 U.S.C. § 2111 (instructing reviewing courts to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights"); *United States v. Lane*, 474 U.S. 438, 445–46 (1986) (distinguishing between constitutional errors and "errors of state law or federal statutes and rules" and holding that all harmless errors should be ignored, "including most constitutional violations") (internal citations omitted). I agree with the majority that "Doe has not raised any colorable claim that his due process or equal protection rights have been violated." Maj. Op. at 9. Nor has he pointed to any substantial right of his that was affected. As a result, I would find that the failure to conduct a hearing in this case was harmless. For that reason, I would affirm the district court's dismissal of Doe's claims.

16